# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RANDY WALLACE** | * | **CIVIL ACTION NO.:** |
| | * | |
| | * | |
| **VERSUS** | * | **SECTION: "   "** |
| | * | |
| | * | |
| **OCEANEERING INTERNATIONAL, INC.** | * | |
| | * | **MAGISTRATE** |
| * * * * * * * * * * * * * * * * | | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Randy Wallace ("Plaintiff" or "Wallace"), through undersigned counsel, and files this complaint to obtain full and complete relief and to redress the unlawful employment practices suffered by him as described herein.

## I. PRELIMINARY STATEMENT

This action seeks declaratory, injunctive and equitable relief, back pay, reinstatement (or in lieu thereof, front pay), compensatory damages, treble damages, punitive damages, attorney's fees, pre-judgment and post-judgment interest, and costs for violations based on the Louisiana Environmental Whistleblower Statute, LA R.S. 30:2027, Title VII of the Civil Rights Act, as

amended, 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Act prohibiting race discrimination.

## II.  JURISDICTION AND VENUE

1.      Plaintiff asserts that this This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the actions arise under the laws of the United States as Plaintiff has received a Right-to-Sue letter from the EEOC for race discrimination and retaliation under Title VII, and under the Court's Supplemental Jurisdiction.

2.      Venue is proper in this District pursuant to the United States Code of Judicial Procedure, 28 U.S.C. § 1391, because the unlawful employment practiced and other actions alleged in the complaint occurred in the Eastern District of Louisiana and as the Eastern District is where Plaintiff would have shipped from had he continued to work for Defendant.

## III.  PARTIES

3.      Plaintiff Wallace is a person of the full age of majority and is a resident of Chicago, Illinois.

4.      Oceaneering International, Inc. ("Defendant" or "OII") is, upon information and belief, a foreign corporation authorized to do business and doing business within the confines of the Eastern District of Louisiana.

## IV.  FACTS AND ALLEGATIONS

5.      Wallace began his employment with OII on or about June 26, 2013 as a Qualified Member of the Engineering Department ("Qmed").

6.      Wallace was assigned to work on the MV Patriot, which is dive boat that is 285 feet long. The Patriot's function is to reach a dive site (usually near an oil rig) and remain in a

stable position using dynamic positioning with bow thrusters and the Z Drive system.

7.   Wallace is African American.

8.   Wallace shipped out from Port Fourchon, Louisiana in Lafourche Parish, Louisiana.,

9.   Defendant OII is a global oilfield provider of engineered services and products.  OII provides worldwide support for oil production involving support of exploration, development, and production drilling by providing advanced observation, data transmission, tooling and hardware products and services.

10.   Defendant has greater than 500 employees.

11.    Upon information and belief, OII utilizes a progressive discipline policy and evaluation policy which includes: (1) verbal warnings to identify problems; (2) written warnings, including a formal meeting with the employee, to establish clear performance expectations to correct the problems; (3) an opportunity for the employee to present his or her case; and (4) termination, if the problems remain unresolved after the above steps.

12.   Wallace was never written up until the untruthful and unfair write up used to justify his termination as a pretext for prohibited race discrimination and/and retaltion.

13.   Plaintiff was assigned to work on OII's vessel, the MV Patriot.

14.   On or about August 12, 2013, Wallace noticed a hangman's noose hanging above the engineering purifier area.

15.   Plaintiff's immediate supervisor was Assistant Chief Engineer Jeff Boylard ("Boylard").

16.   Plaintiff also reported to Senior Chief Engineer John Donlan ("Donlan").

17.   When Plaintiff expressed concern and offense at a hangman's noose being displayed in the engineering area, Boylard responded, "Let me tell you this, I don't like you, boy, and

never did; you're just an uppity n__er that wants a job."  Plaintiff was highly offended and shocked by this remark.

18.    Plaintiff alleges that the remark constituted severe racial harassment., which affected the terms and condition of employment.

19.    On August 18, 2013, Wallace entered the Engine Control Room with Chief Boylard sitting and listening to something on his computer.  The recording was of negative racist reviews of blacks and of this Kenyan-born "n_ _er" President.  Plaintiff was shocked, offended, and deeply emotionally hurt.

20.    Plaintiff objected to Boylard concerning the playing of such racist views in the workplace to no avail.

21.    Plaintiff alleges that Qmed Tony Pensonara often told the crew members that "he would never "f_ _k" a "n_ _er".  Further, Boylard frequently wore a hard hat which had written on it, in large letters, "Coon-Ass Near".

22.     The Captain of the MV Patriot was Toby (last name unknown).

23.    Plaintiff alleges that -- concerning the above referenced racist events and behavior patterns of Chief Boylard was blatantly exhibited to the attention of Chief Engineer John Donlan.  Plaintiff also expressed the same complaints to Captain Joe Delmarco.

24.    Chief Mike Courtney also worked in the engineering department.

25.    On or about March 21, 2014, Chief Mike stated that "blacks appear younger than whites because whites bear more responsibilities, and blacks are lackadaisical and have a carefree, casual attitude."  Plaintiff was offended and complained directly to Chief Mike.

26.    Plaintiff alleges that the conduct as alleged herein constitutes race discrimination and a

racially hostile environment.

27.     Plaintiff Wallace brought numerous complaints to the attention of Senior Chief Engineer Donlan and he expressed those complaints to Captain Joe Delmarco.  At that time, Chief Donlan stated to Captain Delmarco that racism did exist on the MV Patriot.

28.     Plaintiff alleges that the harassment negatively impacted the terms and conditions of his employment as this behavior as it continued unabated and management was not willing to bring it to HR.

29.     Defendant failed to investigate Plaintiff's racial harassment complaints and take proper and prompt remedial measures.

30.     Plaintiff alleges that his complaints directly to the higher level offender and to Captain Toby and Chief Engineer Donlan were protected activity under Title VII and Section 1981.

**31.**

## **THE LOUISIANA ENVIRONMENTAL WHISTLEBLOWER ACT**

32.     On or about October 2, 2013, The MV Patriot was in a stable position in the ocean using dynamic positioning, when it was discovered that a malfunctioning water heater had leaked much water into the ship's bilge causing the amount of water to be about 10,000 gallons.

33.     The only lawful way to dispose of the ship's bilge (which is also full of oil) is to send it to  the oil separator on board.  However, that device was not working on the vessel.

34.     In that situation, the only alternative for lawful disposal is to dispose with the services of a hazardous and /or oil waste disposal company at port.

35.   Chief Boylard did not want to ask the captain to return to port during a dive job in dynamic poisoning; thus, he demanded that Wallace arrange hoses to pump the bilge out of the bow thruster, which resulted in 10,000 plus gallons oily water from the bilge being pumped overboard.

36.   Because such an action obviously violated environmental rules and regulations, including but not limited to the clean water act, Plaintiff declined to pump oil from the bilge into the ocean.

37.   Within ten minutes, Chief Boylard set up a pump and hoses and began pumping oily water from the bilge overboard, into the Gulf of Mexico.

38.   Approximately 30 minutes later, Wallace called a stop work on the pump and secured the pump and closed the valve of the overboard connection proceeding to the engine room to initiate stop work authority.

39.   Plaintiff alleges that stop work authority privilege is given to all members of the vessel in the event that an illegal act or accident is foreseen.

40.   With that action by Wallace, Chief Boylard stated that Wallace should consider himself on report and called to the bridge.

41.   Moments later, Chief Boylard resumed the pumping over the side of oily water from the bilge.

42.   Plaintiff objected that this conduct was clearly a violation of environmental rules and regulations.

43.   Plaintiff estimates that 10,000 plus gallons of oil pumped into the gulf by expert evaluation.

44.  On October 2, 2014, Plaintiff reported this blatant violation of environmental regulation to the Coast Guard.

45.  Plaintiff completed Defendant's company "Observation Report" required for stop work authority action taken on the bow thruster pneumatic pump.

46.  Do to the oil sheen created by Chief Boylan's orders to dump oily bilge water into the ocean, significant oil developed on the surface causing an oil sheen.

47.  Thus, on October 4, 2014 Sr. Chief Donland ordered Wallace under treat of termination to pour 15 gallons of the emulsifier Blue Wash detergent.   This was to prevent further oil sheens from the oily bilge water being pumped into the ocean.

48.  By October 5, 2014 at least 10,000 gallons of oily bilge water had been pumped.

49.  Plaintiff alleges that Defendant failed to have the bilge pumped out by a waste water facility ashore as required by numerous federal regulations including the Clean Water Act and MARPOL.

50.  On or about March 9, 2014 there was a crew changed on the MV Partiot.

51.  Captain Joe Delmarco went to the MV Alliance along with Chief Engineer Donland. Chief Jeff Boylan also left the MV Patriot which went into repair.

52.  Plaintiff remained on the MV Partiot.

53.  Captain Toby became the Captain of the MV Patriot.  The new chief engineer was Chief Mike Courtney.

54.  On March 19, 2014 Wallace became concerned that his complaints about a racially hostile environment on the MV Patriot with the prior crew had not been addressed.

55.  On approximately March 19, 2014, while the MV Patriot was being repaired at Bollinger

Ship Yard, plaintiff noted a barge across the port channel discharging of oily water. Another qualified member of the engineering department confirmed that the oil was leaking and causing oil sheen on the ocean's surface at the bow that led to the Patriot's mid-ship.

56.     About an hour later, Plaintiff saw Captain Toby, Chief DP Officer Tom Collins, and Mike Courtney.  At that time, plaintiff advised all three in person of his intentions to write up an observation on the barge and its discharge of oily water and report the incident to the U.S. Coast Guard.  At that point, Captain Toby stated that Wallace must not write such a report or contact the United States Coast Guard because it will create a lot of paperwork and headaches and he didn't need that type of aggravation.  Tom Collins and Mike Courtney appeared to be in agreement with Captain Toby.

57.     Wallace also advised the new crew managers of the racial harassment and environmental violation he complained about to the prior crew's management.

58.     On March 22, 2014, Chief Courtney and Captain Toby escorted Wallace to the engine room with an alleged concern of water in the bilge.

59.     At that time, Wallace was presented with false accusation that he had allowed too much water to accumulate in an area of the engine room.

60.     The allegation was made that plaintiff had allowed 300 gallons of bilge water to accumulate but the bilge was nearly dry; however, the areas was much dryer than alleged.

61.     Accordingly, Plaintiff confronted Chief Courtney by stating "If you had 300 gallons of bilge water, where did you discard it, because it is forbidden to pump bilge water over the side, which is a violation of Coast Guard regulations."  He could not answer.

-8-

62. On March 21, 2014, Plaintiff spoke to Captain Toby again regarding the above referenced remark by QMED ("Qualified Member of the Engineering Department") Tony that he would never "F_ _k" a "n__ _er".

63. Plaintiff also told Captain Toby that it was his intention to take that remark to a higher authority since it fell deaf ears when he reported racial harassment earlier.

64. On March 25, 2014, Wallace was summoned to the bridge and upon his arrival met Shirley Arceneaux, OII's Hiring Manager, and was relieved of his duties for a fabricated reason stated by Defendant.

65. Plaintiff alleges that whatever reasons Defendant contends that justified his termination was pretext for prohibited racially hostile environment, race discrimination and retaliation for complaining about racism and/or complaining about environmental violations.

66. Defendant is liable unto Plaintiff for retaliatory termination in violation of La. R.S. 30:2027, *et. seq* due to his opposition and refusal to participate in employment practices that violated said act and as such, OSV is liable unto Plaintiff for:

    A. Triple damages which include three years of lost wages, lost anticipated wages due to a wage increase, and, loss of anticipated wages which would have resulted from a lost promotion, and actual damages;

    B. Wages in Back-pay: and, Front-pay wages (including benefits as reinstatement is impractical);

    C. Mental anguish and depression;

D. Humiliation/embarrassment;

E. Loss of enjoyment of life;

F. Medical expenses;

G. Prejudgment interest;

H. Attorney's fees;

I. Costs of these proceedings; and

E. Any such relief as this Court may deem just and proper

## RACE DISCRIMINATION AND RETALIATION

**67.** Due to the above and foregoing allegations, defendant is alternatively liable unto plaintiff, pursuant to Title VII, 42 U.S.C. § 1981 and concurrent Louisiana law for race discrimination and retaliation thus, defendant is liable for:

Back-pay including benefits;

A. Back Pay and Front-pay including benefits;

B. Mental anguish;

C. Humiliation/embarrassment;

D. Loss of enjoyment of life;

E. Medical expenses;

F. Prejudgment interest;

G. Punitive Damages (under Title VII and Section 1981)

H. Attorney's fees;

I. Costs of these proceedings; and

J.      Injunctive relief enjoining defendant from interfering with Plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## VII. JURY DEMAND

68.     Plaintiff demands trial by jury of all issues in this action.

Respectfully Submitted,

_____
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 581-7083
jim@unfairtermination.com

**Attorney for Randy Wallace**

**SERVICE TO OCEANEERING INTERNATIONAL, INC.**
**Through its agent for service of process:**

**C T CORPORATION SYSTEM**
**5615 CORPORATE BLVD., STE. 400B**
**BATON ROUGE, LA 70808**